Good morning, Your Honors. Chad Bowers on behalf of Defendant Quinton Williams. I'd like to reserve two or three minutes for rebuttal. Excuse me. I'd like to speak to the issue of vindictiveness and in the sentencing, resentencing of Mr. Williams after his trial. And as you look at vindictiveness, there's a series of cases that talk about whether there's a presumption and whether the presumption has been rebutted. In this instance, Mr. Smith, or Mr. Williams, after his trial, was sentenced to 85 more months than he was the first time around. That's correct. There was no change in conduct. There were no change in facts that were known. That result, resulting higher sentence, was a function of three changes made to the pre-sentence report. Let me ask you a question. It's my understanding from reading the record and reading what you've said that you really don't disagree that the reasons for changing appear in the record. That's correct. And I'll tell you, I'll even concede something further. Oh, you will even concede something further. Yeah, I'm going to go further. After rereading this, this is one instance where I truly understand why I have an oral argument. I'm going to go a little further and I'm going to say I don't think from the record you can prove actual vindictiveness or that I'm entitled to a presumption of vindictiveness with respect to the court. Okay, well then, you anticipated my question. So at that point, the burden falls directly on you, correct? Yes, and I'll grab it. And what I intend to show, and I think the basis for Mr. Williams' relief, is actual vindictiveness on the part of the U.S. Attorney. And if it's not cited in my brief, I apologize. It's mentioned in Garcia-Gruzia. But Blackledge v. Perry, which is 417 U.S. 21, applies vindictiveness to the behavior of the prosecutor as well as the sentencing authority. So if you'll take my word on that, and I apologize, this is something that I've come across in rereading the briefs. If you'll take my word on that point, I'll finish with the line of thought that I have. Okay, well, I guess I'm trying to figure out then, you're really saying that the court did not have vindictiveness? I'm saying I can't prove it. Well, I'm saying you have the burden. I understand. But I don't think I have to have the court be vindictive. I think the government can be vindictive and the court can accept their findings, which is what happened. Well, in this particular case, isn't it true that the first time the PSR came down, the recommended range for the old D.J. was 110 to 125, and he gave a 125? Yes, Your Honor. And the second time the PSR came down, and this is the probation officer putting together the PSR. Not exactly. Well, I guess I looked at the record. The range was 210 to 262, correct? That's correct, Your Honor. And at that point, the court gave 210. That's correct. So he switched from the 125, which was the highest of the range, to the 210, which was the lowest. That's correct. Okay, so let me talk about the things that I think suggest vindictiveness. In the record, beginning at 118, the government prosecutor says, look, I told Mr. Bowers I would give his client the same sentence if we went back to sentencing directly and we didn't have a new trial. And she's justifying why this higher sentence is not going to be vindictive. Now, what I think is important here to note is she's not ñ she doesn't say, I will give Mr. Bowers' client a comparable sentence. In other words, I'm bound as a U.S. attorney to follow the law and to fix these mistakes that I know are wrong in the sentencing report, but we'll find some adjustment or we'll request a variance from Judge Dawson to give him the original sentence. She says you're going to get the same sentence. The reason that's significant, the sentencing transcript doesn't talk about whether probation made these calculations or someone else did, but you will notice at 113, the government is the one introducing all of these certified convictions for his career offender enhancement. That's not the probation report that does that. Well, the probation report evidently had it. Well, certainly it had it. Certainly it had it. I mean, it recommended the treatment as career offender, and therefore it reviewed the documents, and therefore, as I understood it, recommended a range that was totally different than the first time because it said we recommend, and I'm now quoting, treatment as a career offender in this instance. I agree. Judge Dawson's acceptance of probation's recommendation is not the problem. What I think the problem is is the fact that the U.S. attorney says, look, you can have this deal. You don't want it? Fine. You go to trial. Now I'm going to go gather the records myself. I'm going to introduce them at trial. I'm going to push for you to have the career offender, and that's how you're going to have your sentence increased. That, I think, is evidence of actual vindictiveness on behalf of the prosecutor. Now, if the prosecutor was vindictive, what does that do to the judge? The judge didn't have to accept the prosecutor's recommendation, did he? No, he didn't, and I think if we were dealing with a set of presumptions, maybe I could argue that the judge presumed to be vindictive by giving the higher sentence, but I'm really not in a good position to say the court's vindictive, because all the court has to say is I'm just fixing the record. You know, I'm just fixing the sentences that came to me. You know, the first calculation about grouping was a simple mathematical error, and the second part of it about where probation originally didn't add four points for this conduct and now they have, you know, that's up to probation, and now all of a sudden you're a career offender, and I don't know how that happened. I'm not going to inquire, but the report says you're a career offender, and that's fine with me. So I can give you a much higher sentence. It's 85 months more. It's still at the low range, and I don't have to give any other reason than the original calculation was incorrect. So I – whether Judge Dossal is vindictive or not, I don't know. I have no basis to prove it, and I have no entitlement to a presumption. The fact of the matter is, though, he is a career offender, correct? That's correct, Your Honor. And he did have the convictions that the probation report says he has. That's correct. And there was an error made in the calculation the first time. That's correct. And I guess my point is, I think it's vindictive for the government to say, we know there's these errors. If you choose to accept a plea agreement and not exercise your right to trial, we're not going to correct these errors. We're going to go back and we're going to essentially put on a farce or whatever. We're going to have the same sentence you got the first time. However, if you drag us through trial, low is unto you, because here we go. We're going to give you this career offender. We're going to give you these four points, and we're going to regroup. Did you ever make this argument in your brief? No, and I apologize, Your Honor. So can I even look at it? I don't know. I don't know. I mean, I don't know. I don't know or no? I don't know, Your Honor. You can do what you want. You're a judge. Well, no, I'm not. That's not true. That's what some of my colleagues suggested. I'm not sure I could quite get there. This is what I've made it. You don't have that colleague on the bench here. What I've done in my pleadings is I've laid out the framework for this argument. I have not raised a specific point of the prosecutor's behavior. However, nothing I'm relying on legally and nothing I'm relying on factually is not part of the records that were included for the court to consider. And, frankly, I'll be quite honest, Your Honor. If I had come up here and I'd maintained the fiction that this judge was not entitled to do what he was to do, it would be a nice trip up here and it's nice to meet all you folks, but I don't think it raises anything compelling or thoughtful. My worry, I guess, based on the cases that I'm pretty familiar with, is that if you try a different argument in hearing that you've briefed, that the trip is equally nonproductive. It may be, Your Honor. And maybe somebody will take this transcript and use this for purposes of saying I was ineffective in the way I briefed this case. And if that's the case, that's fine. I mean, I think this issue has to be considered because in all candor, I think I lose on the other issues. Mr. Lawless, I have a question that you haven't raised at all. Do you have any doubts about the sanity of your client? You know, I don't, Your Honor, only because truly his sanity is a technical question to be answered by experts, and I think it was answered in this case. And I'm not in a position to challenge that. When was it answered? He was sent to Los Angeles for a psychiatric evaluation, and they found there to be no problems with him. If you're asking for my personal opinion, I don't know that it's relevant. I think he's crazy like a fox. I don't think he's crazy like a fox. He didn't say crazy. He said like a fox. Yeah, I think, Your Honor, that he felt there was some perceived benefit in this behavior. But I have to defer to the experts who say he's sane. So I don't mean to lightly come up here and sort of argue facts I didn't include, but quite frankly, I don't think I have much of an argument with respect to the court's conduct. I think it lies with the prosecutor. All right. Thank you. Thank you. Good morning. May it please the Court. Adam Flake for the United States. As Your Honor pointed out, this argument was not specifically raised in the briefs, and therefore I'm not very prepared to specifically address it. I would like to point out just two things briefly, if I may. They're interrelated. The opposing counsel mentioned that the government would have engaged in some kind of farce and withheld information if he had pled guilty. That is not supported in the record. Very often, very often we agree to seek a lesser sentence in exchange for the defendant pleading guilty. That happens literally in every case, I think, we offer a plea agreement. If not in every case, then in the vast majority. There's no vindictiveness in offering a lower sentence in exchange for a guilty plea. And this record does not support the inference that we would have withheld information from the court. We would have, of course, fully disclosed everything. It would have made a difference if we did withhold it, because probation, who prepared the PSR, explained what the sentence should have been. But this notion that somehow we would have misled the court to avoid a trial and we were vindictive when he refused our plea agreement is simply not supported by the record. Anything else? Not unless the panel has any questions for me. I don't. We don't. Thank you very much. Thank you. You've got 40 seconds. That's all I have. I'm sorry, Your Honor. I don't want to insinuate that the prosecution would withhold anything from the court. I don't know how that would have worked had we accepted that deal, and I don't mean to infer that the prosecution would have done anything inappropriate. I do maintain, though, that offering the sentence and then taking it away at the conclusion is vindictive. But I don't mean to suggest that Ms. Brown or our local U.S. attorney would in any way behave inappropriately with the court. Thank you very much. Thank you. We thank counsel for their arguments. And Case 09-10506, United States of America v. Quinn Williams, is submitted.
judges: Collins, Noonan, Smith N. R.